No. 116,896

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AKESOGENX CORP.,
*Appellee*,

v.

ROBERT ZAVALA,
*Appellant*.

SYLLABUS BY THE COURT

1.

Forum selection clauses are generally enforceable in Kansas.

2.

Enforceability of a forum selection clause hinges on the following: (1) the existence of a reasonable relationship between the selected forum and the complained about transaction; (2) the existence of language in the clause mandating that all suits be brought in a certain forum; and (3) the nonexistence of fraud or duress.

3.

Whether a forum selection clause is enforceable is a question entirely distinct from whether a court has jurisdiction. Parties' agreements about where to file suit do not divest a court of personal or subject matter jurisdiction. Instead, when an enforceable forum selection clause exists, a court must consider whether it should exercise its jurisdiction given the existence of the parties' agreement.

1

4.

Because venue involves the proper or possible places lawsuits may proceed, a party's complaint about a forum selection clause violation involves a venue challenge. Venue challenges must be timely raised in a responsive pleading or motion. See K.S.A. 2016 Supp. 60-212(b)(3).

5.

A forum selection clause that includes conditional provisions allowing a party to bring suit in an alternative forum is a permissive forum selection clause as opposed to a mandatory forum selection clause.

6.

Under the facts of this case, Zavala's argument that AKESOGENX Corp. violated its forum selection clause by filing suit in Kansas, which it raised for the first time in a motion to alter or amend under K.S.A. 2016 Supp. 60-259(f), was untimely.

7.

The party asserting error must designate a record establishing prejudicial error. Without such a record, a party's argument will fail. An appellant's failure to include the transcript from the hearing on the motion from which he or she appeals stifles this court's ability to review for error.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed November 9, 2017. Affirmed.

*Robert J. Bjerg*, of Colantuono Bjerg Guinn, LLC, of Overland Park, for appellant.

*Christopher K. Snow* and *J. Michael Grier*, of Warden Grier LLP, of Kansas City, Missouri, and *Michael P. Whalen*, of Wichita, for appellee.

2

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

GREEN, J.:  AKESOGENX Corp. (AKG) sued Robert Zavala, its former Chief Executive Officer (CEO), in the Johnson County District Court for breach of fiduciary duty and conversion. Eventually, the district court entered default judgment against Zavala in favor of AKG. It also ordered that Zavala pay AKG damages in the amount of $500,400.35. Over a month later, Zavala moved to set aside the default judgment, arguing that AKG had failed to properly obtain residential service of process on him, that the district court had violated a procedural rule regarding default judgment, and alternatively, that his lack of prior involvement in the case had resulted from excusable neglect. The district court rejected these arguments, but Zavala moved the district court to reconsider. In his motion to reconsider, Zavala raised a new argument. He asserted that the district court lacked subject matter jurisdiction to enter the default judgment against him because AKG had an exclusive forum selection clause within its certificate of incorporation which required AKG to sue him in the state of Delaware. The district court rejected this argument as well. Zavala now appeals the district court rulings, arguing that each was in error.

For reasons set forth below, we reject Zavala's arguments. Accordingly, we affirm.

AKG was a Delaware corporation involved in cancer research, which "use[d] radio waves to heat up and kill cancer cells while preserving the normal tissue, . . . reducing the side effects associated with traditional chemical therapy regimens or invasive surgery." Although AKG was a Delaware corporation, its principal place of business was in Leawood, Kansas, a city within Johnson County, Kansas. During its first two years of business, AKG received nearly $2 million in capital investment for its cancer research.

Shortly after it was incorporated in 2013, Mary Kunkle began acting as AKG's Secretary and Treasurer. Through her role as AKG's Treasurer, Kunkle had access to

3

AKG's finances. Kunkle was in a romantic relationship with AKG's CEO, Zavala. Through his role as CEO, Zavala also had access to AKG's finances. The AKG Board of Directors (Board) terminated both Kunkle and Zavala during their special Board meeting on May 16, 2014.

On March 2, 2015, AKG sued Kunkle in the Johnson County District Court alleging breach of fiduciary duty and conversion of corporate assets. AKG explained that for nearly a year, it had asked Kunkle to explain why money was missing from its accounts. AKG explained that Kunkle had failed to respond to its requests. AKG alleged that through its independent review of Kunkle's accounting from its "QuickBooks" and available banking records, Kunkle had converted $174,905.59. AKG alleged that Kunkle had converted company money from AKG the entire time she worked for it.

On August 19, 2015, AKG filed its first amended petition with the Johnson County District Court. In this amended petition, AKG reiterated its claims of breach of fiduciary duty and conversion of corporate assets. It, however, added Zavala as a party defendant. AKG asserted that in addition to the $174,905.59 it believed Kunkle had converted, it believed Zavala had converted about $195,341. AKG explained that its Board had asked Zavala to turn over certain financial documents—financial statements and tax related documents—in early 2014, but Zavala had refused the Board's requests. This resulted in the Board's termination of Zavala as AKG's CEO on May 16, 2014. AKG alleged that because Zavala had refused to turn over the financial documents it needed, it went to the Bryan Cave law firm—a firm it had previously retained—to see if the firm had the financial documents it needed. When AKG spoke with a representative of Bryan Cave, it learned that Zavala had visited the firm's office just two days before he was terminated, removing all documents pertaining to AKG from the firm. AKG explained that it calculated the missing $195,341 sum from its "QuickBooks" and available banking records.

In its first amended petition, AKG also stated that it intended to serve Zavala "at his current residence address," which had yet to be determined. On November 23, 2015, AKG filed a notice of service with the Johnson County District Court that it had served process on Zavala in three ways, each occurring on November 10, 2015. First, AKG asserted that it had rendered personal service on Zavala in Alamo, Texas. AKG also asserted that it had rendered residential service at Zavala's residence in Alamo, Texas. Last, AKG asserted that it had rendered residential service at Zavala's residence in Walnut Creek, California.

The sworn statement of Antonio Huizar, the process server from Alamo, Texas, was attached to AKG's filing. In Huizar's statement, Huizar explained that when he went to the house he believed to be Zavala's, a female, who identified herself as Zavala's mother, told him that Zavala was not currently at home but would return home later. He explained that a few minutes after he gave Zavala's mother his contact information, a man, who identified himself as Zavala, phoned him. Huizar asserted that he told Zavala that he had a package for him, but Zavala told him to leave it with his mother because he was not available; Zavala then hung up. Huizar explained he called Zavala back and offered to deliver the package to him personally, but Zavala told him to deliver the package to his mother because he was not available. According to Huizar, he then went back to the place he believed to be Zavala's house and confirmed with Zavala's mother that Zavala "did in fact currently live at the residence." Huizar stated that once he confirmed Zavala was residing in the house, the "service documentation was handed to [Zavala's mother]." Significantly, the process server from Contra Costa, California, maintained that he rendered residential service by leaving service documentation with a woman who claimed to be Zavala's mother as well.

On December 21, 2015, the district court entered a default judgment against Zavala. The district court's judgment, in substantive part, was as follows:

5

"On December 3, 2015, the Court conducted a scheduling conference. Plaintiff appeared by and thru its counsel Christopher K. Snow. Defendant Mary Kunkle appeared *pro se* and participated telephonically. Defendant Robert Zavala did not appear despite due notice of the scheduling conference, and likewise did not timely file a responsive pleading to Plaintiff's First Amended Petition. Accordingly the Court hereby enters judgment by default against Defendant Zavala with respect to Plaintiff's claims, [and] further sets a hearing on damages with respect to Plaintiff's claims against Defendant Zavala for January 4, 2016 . . . ."

On January 4, 2016, even though he had been served notice, Zavala did not appear at the damages hearing. The only evidence at the hearing came from Christopher Stevens, who served as interim CEO following Zavala's termination. Stevens testified that based upon his review of the QuickBooks and bank statements, he determined that Zavala had used a total of $500,400.35 of AKG funds for noncorporate purposes while CEO. Thus, Stevens requested that AKG be reimbursed this money. Stevens also requested that Zavala lose his 1.6% stock interest in AKG. At the end of the hearing, the district court granted Stevens' request.

Over a month later, on February 19, 2016, Zavala moved to set aside default judgment and to file a responsive pleading out of time. In this motion, Zavala argued that he had never been served with AKG's first amended petition. Zavala complained about how he was served process in Texas, making no mention of how he was served process in California. He asserted that assuming he was served on November 10, 2014, the default judgment against him was void because it was prematurely entered in violation of K.S.A. 2016 Supp. 60-308(a). Under K.S.A. 2016 Supp. 60-308(a), defendants who are served out of state have 30 days to respond to a petition. Zavala argued that because the district court's December 21, 2015, default judgment order stated that he failed to appear at the December 3, 2015, scheduling conference, the district court actually entered its default judgment against him on December 3, 2015, which was only 23 days after he had been served. He also asserted that the default judgment should be set aside based upon

6

excusable neglect. Last, Zavala complained that AKG was not entitled to any stock he may own through the default judgment.

In support of his arguments, Zavala attached a sworn affidavit. In his sworn affidavit, Zavala alleged that on November 10, 2015, AKG "served a summons and First Amended Petition on my mother at her residence at . . . Alamo, Texas . . . .This address is not my dwelling or usual place of abode." He further alleged that he "did not ignore the service of the summons and Petition" because he "immediately contacted an attorney." This attorney then e-mailed AKG's attorney, who responded that "any further communication from [him] needed to be in writing and directed to his [law] office." Zavala asserted that "he [had] repeatedly tried to engage the company in a dialogue concerning this dispute without resorting to the legal process, but without success." Finally, Zavala asserted that AKG's allegations against him for breach of fiduciary duty and conversion were unfounded. He stated he had a meritorious defense because AKG's "Petition [was] wholly unfounded" and "contain[ed] a number of false allegations about [him]." He then stated that AKG sued him because the Board knew he intended to sue the Board for wrongful action taken regarding certain AKG stock in March 2015 and the Board wanted to eliminate his presence in the company.

AKG responded that the district court should reject Zavala's arguments for the following reasons: (1) Zavala had not credibly alleged that he had been served erroneously with process; (2) Zavala had mischaracterized the district court's default judgment by asserting that it was entered on December 3, 2015, given that it was not filed until December 21, 2015, which was well over the K.S.A. 2016 Supp. 60-308(a) 30-day time requirement; and (3) Zavala had admitted he consciously chose not to participate in the lawsuit, which did not constitute excusable neglect.

On March 8, 2016, the district court held a hearing on Zavala's motion where both parties made arguments. Nevertheless, this hearing has not been included in the record on

7

appeal. Indeed, the only information about the March 8, 2016, hearing comes from the district court much later in its October 28, 2016, journal entry of judgment. This journal entry summarized that hearing as follows:

"On March 8, 2016, the Court conducted the hearing and received argument on Defendant Zavala's Motion to Set Aside Default Judgment and to File Responsive Pleading Out of Time. Plaintiff appeared by its counsel . . . Defendant Zavala appeared by his counsel . . . ; Defendant Kunkle appeared on her own behalf telephonically. *For the reasons stated upon the record, the Court denied Defendant's Motion to Set Aside the Default Judgment.* However, at the March 8, 2016 hearing, the Court further directed the parties to file supplemental briefs and provide certain other information for the Court's further consideration with respect to the equitable disgorgement remedy, specifically whether the Default Judgment should include the Plaintiff's request for relief that Defendant Zavala [] relinquish[] any and all stock ownership or any other equity interest in [AKG.] The Court further ordered the parties to appear on April 14, 2016, for further argument on the matter." (Emphasis added.)

At the end of the April 14, 2016, hearing, the district court orally ruled that Zavala did not personally own any AKG stock; instead, the AKG stock was held by a company called AGX Holdings, LLC, which was owned solely by Zavala. Accordingly, the district court ruled that its damages award could not include an order that would require Zavala to relinquish his stock ownership of AKG stock. This meant that the district court would have to amend its damages award, which at that point required Zavala to relinquish his personal stock interest in AKG. Even so, the district court granted AKG's request for an equitable attachment to Zavala's ownership in AGX Holdings pending satisfaction of AKG's damages. It also prohibited Zavala from disposing of his ownership in AGX Holdings pending satisfaction of AKG's damages.

On August 2, 2016, Zavala filed a motion entitled: "Motion to Reconsider and Vacate the Court's Journal Entry of Default Judgment on the Ground that the Court Lacked Jurisdiction over this Action based on the Exclusive Forum Selection Clause in

8

Plaintiff's Certificate of Incorporation." Article X of AKG's certificate of incorporation stated:

> "Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or to the Corporation's stockholders . . . ."

Zavala asserted that the preceding language made Delaware "the mandatory exclusive" forum for any action brought by AKG, meaning the Johnson County District Court lacked jurisdiction to enter a default judgment.

AKG responded that Delaware was not the mandatory exclusive forum for any action brought by AKG given that Article X expressly stated that AKG may "consent[] in writing to the selection of an alternative forum." AKG asserted that it satisfied the "consent[] in writing" requirement with each of its filings with the Johnson County District Court because the filings were "written submissions" which established that it "'consent[ed]' to" Kansas as the forum of the lawsuit. AKG also argued that the minutes from its February 27, 2015, Board meeting established that AKG consented in writing to Kansas being the forum of the lawsuit. The minutes from that meeting, which were attached to AKG's response, stated that the majority of the Board voted to retain Warden Grier, LLP, a Kansas City, Missouri, based law firm, to sue Kunkle for breach of fiduciary duty.

AKG further responded that the forum selection clause Zavala relied on "did not implicate 'jurisdiction' in any respect." AKG asserted that any problem that could possibly exist would relate to venue, which Zavala waived by failing to raise at an earlier time. Moreover, AKG asserted that Zavala's motion to reconsider was untimely. AKG

9

asserted it was untimely because it was not filed within 28 days of December 21, 2015, the date the default judgment was entered, in violation of K.S.A. 2016 Supp. 60-259(f).

On September 27, 2016, the district court denied Zavala's motion to reconsider. First, the district court determined that Zavala's motion was truly a motion to alter or amend under K.S.A. 2016 Supp. 60-259(f), which exists to allow the district judge the opportunity to correct prior errors. Second, the district court ruled that Kansas was the proper forum for the lawsuit because AKG "authorized the lawsuit to be filed in this forum pursuant to the February 27, 2015[,] Special Meeting of the Board of Directors by adopting a resolution to retain Warden Grier, LLP to recover damages from Defendant Mary Kunkle." The district court ruled that there was no issue with jurisdiction. Third, the district court ruled that Zavala's motion was not procedurally proper because his argument could not be raised within a motion to alter or amend.

Next, on October 28, 2016, the district court entered two journal entries of judgment. In the first journal entry of judgment, the district court summarized its oral rulings from the April 14, 2016, hearing regarding AKG's equitable attachment rights to Zavala's ownership interest in AGX Holdings, which owned Zavala's AKG stock. In the second journal entry, the district court amended its January 8, 2016, journal entry of judgment concerning its award of damages to reflect its new rulings regarding Zavala's stock ownership.

Zavala timely appealed.

*Did the District Court Err by Denying Zavala's Motion to Reconsider?*

Zavala argues that the district court erred by denying his motion to reconsider his motion to set aside the default judgment because AKG did not comply with its forum selection clause. Zavala asserts that AKG's forum selection clause mandated that AKG

10

file all lawsuits in Delaware. Based upon this interpretation of the clause, Zavala argues that the Johnson County District Court lacked subject matter jurisdiction to enter default judgment against him. In support of his argument, Zavala cites to two cases from this court—*Vanier v. Ponsoldt*, 251 Kan. 88, 833 P.2d 949 (1992), and *Aylward v. Dar Ran Furniture Industries, Inc.*, 32 Kan. App. 2d 697, 87 P.3d 341 (2004). Zavala asks this court to reverse the district court's ruling on his motion to reconsider as well as vacate the district court's entry of default judgment against him.

AKG responds that Zavala's argument is incorrect for a number of reasons, not the least of which is that forum selection clauses do not undermine courts' subject matter jurisdiction. To support this proposition, AKG relies heavily on the cases *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), and *Nickerson v. Network Sols., LLC*, 339 P.3d 526 (2014). AKG asserts that it is clear Zavala's complaints are about venue, which cannot be properly raised in a motion to reconsider. AKG additionally argues that its forum selection clause was permissive rather than mandatory because the clause states that it can sue in an alternative forum when it "consents in writing." AKG then asserts that it consented in writing to suing Zavala in Kansas in a variety of ways.

*Standard of Review*

Appellate courts review challenges from the denial of a motion to reconsider, which are most always treated as motions to alter or amend under K.S.A. 2016 Supp. 60-259(f), for an abuse of discretion. *Cutler v. Sosinski*, 34 Kan. App. 2d 647, 649, 122 P.3d 405 (2005). An abuse of discretion occurs when the district court takes an action based on an error of law, an error of fact, or an otherwise unreasonable decision.

Nevertheless, to the extent Zavala's challenge involves jurisdiction, whether jurisdiction exists is a question of law over which this court exercises unlimited review.

11

*Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). Furthermore, to the extent Zavala's challenge involves construction of AKG's forum selection clause, the interpretation and legal effect of the clause is a question of law over which this court exercises unlimited review. *Thompson v. Founders Group Int'l, Inc.*, 20 Kan. App. 2d 261, Syl. ¶ 3, 886 P.2d 904 (1994).

*Forum Selection Clause Law*

Historically, forum selection clauses were forbidden by courts as contrary to public policy. Yet, the United States Supreme Court rejected this reasoning in *The Bremen*, explaining:

"Forum-selection clauses have historically not been favored by American courts. Many courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court. Although this view apparently still has considerable acceptance, other courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view, advanced in the well-reasoned dissenting opinion in the instant case, is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances. We believe this is the correct doctrine to be followed by federal district courts sitting in admiralty." 407 U.S. at 9.

Even though *The Bremen* case involved admiralty law, as noted by our Supreme Court in *Vanier*, "[t]he application of the rule in *The Bremen* has not been limited to admiralty cases." 251 Kan. at 100. Indeed, Kansas courts will generally enforce forum selection clauses. The *Vanier* court explained:

"Parties to a contract may choose the jurisdiction in which all actions or proceedings arising from their transaction shall be heard. The forum selected by the parties must bear a reasonable relationship to the transaction and the forum-selection clause in the contract must not have been entered into under fraud or duress." 251 Kan. 88, Syl. ¶ 2.

12

Accordingly, in Kansas, enforceability hinges on (1) the existence of a reasonable relationship between the selected forum and the complained about transaction and (2) the nonexistence of fraud or duress.

Additionally, enforceability hinges on the language within the forum selection clause itself. There are two types of forum selection clauses—mandatory and permissive. To determine if a forum selection clause is mandatory or permissive, courts must look to the plain language of the clause. The key is whether there is language within the clause stating that a certain forum is the *exclusive* forum where the parties may bring suit. See *Aylward*, 32 Kan. App. 2d at 699-700; *Thompson*, 20 Kan. App. 2d 261, Syl. ¶ 5. If there is language stating that a certain forum is the exclusive forum, then the clause is a mandatory forum selection clause; if not, then it is a permissive forum selection clause.

Next, another concept that sometimes arises when addressing the enforceability of forum selection clauses is jurisdiction. There seems to be no Kansas cases where the potential negative effect of forum selection clauses on jurisdiction—either subject matter or personal—has been unequivocally addressed. The United States Supreme Court and the Colorado Supreme Court, however, have addressed this exact issue, and their holdings provide helpful guidance.

In *The Bremen* case, the United States Supreme Court rejected the argument that a forum selection clause could eliminate a court's jurisdiction:

> "The argument that such clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals. No one seriously contends in

13

this case that the forum selection clause 'ousted' the District Court of jurisdiction over Zapata's action. *The threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause.*" (Emphasis added.) 407 U.S. at 12.

Very recently, in *Nickerson*, the Colorado Supreme Court reversed a district court for setting aside a default judgment for lack of jurisdiction based upon a party's alleged failure to comply with a forum selection clause. 339 P.3d at 528. In doing so, the *Nickerson* court first defined subject matter jurisdiction, personal jurisdiction, and forum selection clauses. It explained that subject matter jurisdiction derived from Colorado's constitution and statutes, personal jurisdiction involved the court's authority "to subject a particular defendant to the decision of the court," and forum selection clauses were contracts between parties "as to where they will bring any litigation related to the contract." 339 P.3d at 529-30.

After defining these terms, the Colorado Supreme Court clearly held:

"Although forum selection clauses may be enforceable generally, the parties' agreement as to the place of the action *does not divest a court of personal or subject matter jurisdiction*. Colorado courts have long adhered to the common law principle that 'the lawful jurisdiction of courts cannot be ousted by the private agreements of individuals.' [Citation omitted.]" (Emphasis added.) 339 P.3d at 530.

The *Nickerson* court then concluded that the district court's "order vacating the default judgment conflates the distinction between the court's jurisdiction over the action and the strong preference for declining to exercise jurisdiction based on the parties' forum selection agreement." 339 P.3d at 530-31.

14

*Application of Law*

Once again, Zavala's argument is that AKG's forum selection clause within its certificate of incorporation resulted in Delaware being the exclusive forum where AKG could sue him. Thus, Zavala argues that AKG violated the forum selection clause when it sued him in Kansas. He also contends that AKG's forum selection clause deprived Kansas courts of subject matter jurisdiction over the case. Accordingly, two things are clear from Zavala's arguments: (1) he believes that the district court lacked jurisdiction to enter the default judgment based upon the forum selection clause; and (2) he believes that the forum selection clause is a mandatory forum selection clause.

Regarding Zavala's jurisdiction argument, the entirety of Zavala's argument hinges on this court's decision in *Aylward*. In *Aylward*, Aylward sued Dar Ran in the Johnson County District Court. Dar Ran moved to dismiss Aylward's case for lack of personal jurisdiction. Dar Ran argued that forum selection clause within its contract with Aylward, which stated that the parties must settle any disputes in North Carolina, prevented the district court from obtaining personal jurisdiction over it. The district court granted the motion to dismiss for lack of personal jurisdiction. Aylward appealed arguing (1) that Kansas had personal jurisdiction over Dar Ran, (2) that the forum selection clause was not mandatory, but permissive, and (3) that he was forced to sign the contract containing the clause under duress.

The *Aylward* court rejected Aylward's second and third arguments, but it declined to reach Aylward's first argument. The *Aylward* court explained that because Aylward and Dar Ran's forum selection clause was mandatory and voluntarily entered into, the forum selection clause was enforceable. The Aylward court then held that because it "conclude[d] that the forum selection clause in Aylward's contract [was] enforceable, [it did] not need to examine whether a Kansas court would have jurisdiction over the parties under K.S.A. 60-308(b)." 32 Kan. App. 2d at 701.

15

Zavala seemingly asserts that because the *Aylward* court affirmed the district court, it also affirmed the district court's ruling that the forum selection clause eliminated Kansas' jurisdiction. Yet, this is clearly not the case. Although the *Aylward* court did not explicitly hold that the district court erred when it ruled that it lacked personal jurisdiction based upon Aylward and Dar Ran's forum selection clause, it certainly did not approve of this ruling. Instead, it declined to consider the issue entirely. The *Aylward* court only affirmed the district court's dismissal of Aylward's case because Aylward and Dar Ran's forum selection clause was enforceable and mandated that Aylward file suit in North Carolina. 32 Kan. App. 2d at 701.

Accordingly, the *Aylward* court did not affirm the district court's dismissal of Aylward's case for lack of personal jurisdiction. Moreover, the *Aylward* court in no way commented on subject matter jurisdiction, which is the type of jurisdictional defect that Zavala has specifically alleged the district court had made based upon AKG's forum selection clause. As a result, despite his argument to the contrary, the *Aylward* decision does not support Zavala's argument that the district court lacked subject matter jurisdiction. In turn, the *Aylward* decision does not support his contention that the district court should have granted Zavala's motion to reconsider on that basis.

Next, as previously mentioned, AKG not only asserts that Zavala's analysis is incorrect, but also asserts that the United States Supreme Court's reasoning in *The Bremen* and the Colorado Supreme Court's reasoning in *Nickerson*, regarding the effect of forum selection clauses on jurisdiction, apply equally in Kansas. In support of this contention, AKG emphasizes that Kansas courts attain jurisdiction in the same manner that other courts attain jurisdiction. As a result, AKG argues that this court should adopt *The Bremen* court's and *Nickerson* court's holdings that forum selection clauses cannot oust a court of jurisdiction. A quick review of Kansas' rules on subject matter and personal jurisdiction establishes that AKG is correct.

16

"Subject matter jurisdiction is vested by statute or constitution and establishes the court's authority to hear and decide a particular type of action." *Chelf v. State*, 46 Kan. App. 2d 522, Syl. ¶ 3, 263 P.3d 852 (2011). Moreover, "[p]arties cannot confer subject matter jurisdiction upon the courts by consent, waiver, or estoppel. Parties cannot confer subject matter jurisdiction by failing to object to the court's lack of jurisdiction." 46 Kan. App. 2d 522, Syl. ¶ 3. Meanwhile, "[p]ersonal jurisdiction is defined as the court's power over the defendant's person and is required before the court can enter an in personam judgment." *In re Marriage of Salas*, 28 Kan. App. 2d 553, 555, 19 P.3d 184 (2001). As outlined under K.S.A. 60-301 et seq., Kansas courts obtain personal jurisdiction over the defendant by having minimum contacts with that defendant and successful service of process.

Clearly, if parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, parties cannot contract away a court's subject matter jurisdiction through a forum selection clause. Similarly, once minimum contacts and service of process occurs, the fact that a forum selection clause requires parties to sue in a different forum has no bearing on the current court's personal jurisdiction over the defendant. As explained by Leandra Lederman, in her article *Viva Zapatas: Toward A Rational System of Forum-Selection Clause Enforcement in Diversity Cases*: "Although the plaintiff may have violated the forum-selection clause, the determination of whether the noncontractual court has personal jurisdiction over the defendant is independent of the forum-selection clause." 66 N.Y.U. L. Rev. 422, 446 (1991).

Consequently, AKG's forum selection clause—whether mandatory or permissive—in no way impaired the district court's jurisdiction to consider Zavala's case. As held in *The Bremen* and *Nickerson* decisions, any issues that could possibly involve jurisdiction would be entirely independent of the forum selection clause within AKG's certificate of incorporation. Thus, Zavala's argument that AKG's forum selection clause

17

divested the district court of subject matter jurisdiction is fatally flawed. In turn, his argument that the district court erred by failing to grant his motion to reconsider on this basis is invalid.

After establishing that the failure to enforce a forum selection clause has no bearing on a court's jurisdiction, the question then becomes: What exactly are defendants challenging when they assert that plaintiffs have sued in an inappropriate forum in violation of a forum selection clause? In the relatively recent case *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. ___, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013), the United States Supreme Court provided some guidance when it held that parties seeking to enforce forum selection clauses may do so by moving for a change in venue. Indeed, in *Atlantic Marine Const. Co.*, the United States Supreme Court viewed the alleged forum selection clause violation strictly as a matter concerning improper venue. 134 S. Ct. at 577-80.

Venue involves "[t]he proper or a possible place for a lawsuit to proceed, usu[ally] because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant." Black's Law Dictionary 1790 (10th ed. 2014). Improper venue, on the other hand, involves either "[a] place or court where jurisdiction is not authorized under a statute or *by agreement of the parties*." (Emphasis added.) Black's Law Dictionary 1790 (10th ed. 2014).

Clearly, based upon the United States Supreme Court's holding in *Atlantic Marine Const. Co.*, as well as the meaning of proper and improper venue, it is readily apparent that Zavala's complaints concerning the forum selection clause truly concern venue. He believes that the forum selection clause within AKG's certificate of incorporation mandated that he be sued in Delaware, meaning Kansas is an improper venue.

18

Yet, "venue is not a jurisdictional matter, but a procedural one." *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 546, 567 P.2d 1292 (1977). In fact, it is a procedural matter that "relates to the *convenience* of litigants." (Emphasis added.) *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 639, 65 S. Ct. 821, 89 L. Ed. 1241 (1945). As a result, unlike complaints about subject matter jurisdiction, which cannot be waived, complaints about venue can be waived. This is why K.S.A. 2016 Supp. 60-212(b)(3) states that a complaint about venue is a defense which parties must raise in a responsive pleading or in a motion. Our Supreme Court has held that parties who fail to raise their complaint in either a responsive pleading or *timely* motion waive all complaints about venue. *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, Syl. ¶ 2, 814-15, 987 P.2d 1096 (1999).

Here, Zavala did not raise his complaint about venue until after the district court had already entered a default judgment against him. This was not timely in any sense of the word. The very fact that venue is a defense that can be waived establishes that such challenges cannot be properly raised after the district court has already entered a default judgment. Moreover, Zavala raised his complaint in a motion to reconsider. Motions to reconsider are treated as motions to alter or amend judgment under K.S.A. 2016 Supp. 60-259(f). See *Cutler*, 34 Kan. App. 2d at 649. Here, the district court treated Zavala's motion to reconsider as a motion to alter or amend under K.S.A. 2016 Supp. 60-259(f), and Zavala has not complained about this treatment. "[T]he purpose of a motion to alter or to amend under K.S.A. 60-259(f) is to allow a trial court an opportunity *to correct prior errors*." (Emphasis added.) *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939, 159 P.3d 215 (2007). Yet, because Zavala never challenged venue before the district court entered the default judgment against him, there was no prior error to correct. In short, because Zavala waited to challenge venue until after the district court had entered default judgment against him, he waived all complaints about venue he may have had. Complaints about venue cannot be properly raised in motions to alter or amend under K.S.A. 2016 Supp. 60-259(f).

19

Next, it is clear that Zavala's complaint about AKG's forum selection clause did not properly involve subject matter jurisdiction. See *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015) (holding that subject matter jurisdiction challenges may be raised at any time). Because Zavala's complaint did not concern jurisdiction, it is readily apparent that Zavala did not have the luxury of raising his complaint at any time. Indeed, he was required to comply with K.S.A. 2016 Supp. 60-259(f)'s time limit in which to move to alter or amend. This required the motion to be filed "no later than 28 days after the entry of judgment." Importantly, Zavala was not requesting that the district court reconsider the denial of his motion to set aside default judgment. This is clear because Zavala did not repeat any of his motion to set aside default judgment arguments. Instead, he was raising an entirely new argument. But he did so on August 2, 2016, 255 days after the district court had entered default judgment against him. Thus, Zavala failed to comply with K.S.A. 2016 Supp. 60-259(f)'s time limit requirements, and his argument fails for this reason.

We note that had Zavala *timely* challenged venue based upon the forum selection clause, the district court would have been able to consider whether venue was proper in the Johnson County District Court. As explained by the United States Supreme Court in *The Bremen*, the district court could have questioned whether it "should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." 407 U.S. at 12. Yet, under the facts of this case, even if Zavala had raised his venue complaint earlier, he would not have been entitled to dismissal of AKG's case against him. This is because the forum selection clause within AKG's certificate of incorporation did not mandate Delaware as the exclusive forum for any potential lawsuit. Indeed, the record establishes that AKG did not violate its forum selection clause.

20

For example, AKG's forum selection clause states:

> "Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or to the Corporation's stockholders . . . ."

In its brief, AKG cites to the conditional provision of AKG's forum selection clause, which allows AKG to sue in an alternative forum if it consents in writing, as evidence that the forum selection clause was not mandatory. In his brief, however, Zavala has ignored this conditional provision.

Again, whether a forum selection clause is mandatory or permissive turns on whether there is language within the clause stating that a certain forum is the *exclusive* forum where the parties may sue. See *Aylward*, 32 Kan. App. 2d at 699-700; *Thompson*, 20 Kan. App. 2d 261, Syl. ¶ 5. To be sure, the use of the terms "shall," "sole," and "exclusive" in the phrase "the Court of Chancery of the State of Delaware shall be the sole and exclusive forum" weighs towards exclusivity. Yet, when the conditional provision is also considered, which reads "[u]nless the Corporation consents in writing to the selection of an alternative forum," it is readily apparent that AKG can sue in alternative forums so long as it obtains consent in writing to do so. Because the conditional provision allows AKG to sue parties in forums other than Delaware, AKG's forum selection clause is not a mandatory forum selection clause but a permissive forum selection clause.

We can next consider whether AKG complied with the conditional provision by obtaining written consent to sue in Kansas. To review, the district court ruled that the minutes from AKG's "February 27, 2015, Special Meeting of the Board of Directors . . .

21

adopting a resolution to retain Warden Grier, LLP to recover damages from Defendant Mary Kunkle" constituted written consent. AKG argues that both the minutes, as well as all of its filings with the district court, constituted written consent. Of importance, outside of simply stating that there must be written consent, AKG's forum selection clause provides no guidance as to (1) what type of written consent must be obtained and (2) what information must be contained within the written consent. Accordingly, there seems to be countless ways AKG could comply with the conditional provision. Although an explicit written statement by AKG that it decided to sue Zavala in Kansas would undoubtedly be the better practice, AKG's minutes as well as various filings with the Johnson County District Court constitute writings where AKG, as the corporation, clearly consented to suing Zavala in Kansas. As a result, Zavala's argument that AKG violated its forum selection clause is repugnant to reason.

*Conclusion*

As mere contracts between parties, forum selection clauses are independent of a court's jurisdiction over a defendant. Therefore, the major premise of Zavala's argument is incorrect. Instead of being a jurisdictional issue, the issue is one of venue. Yet, when venue is at issue, it must be raised by the complaining party in a timely manner or it is waived. Zavala's failure to timely raise his venue complaint has resulted in waiver. Moreover, Zavala's motion to consider was not filed within K.S.A. 2016 Supp. 60-259(f)'s 28-day time limit. Thus, his motion to reconsider was statutorily untimely under K.S.A. 2016 Supp. 60-259(f). Last, the forum selection clause in AKG's certificate of incorporation was not mandatory but permissive. Through its February 27, 2015, Board meeting minutes and its filings with the district court, AKG invoked the conditional provision of its forum selection clause, which allowed it to file suit in Kansas. Consequently, every aspect of Zavala's argument fails. In other words, the district court properly denied his motion to reconsider.

22

*Did the District Court Err by Denying Zavala's Motion to Set Aside Default Judgment?*

Next, Zavala makes three separate arguments, each of which he first raised in his motion to set aside default judgment. First, Zavala argues that the district court erred when it denied his motion to set aside default judgment because AKG never successfully served process on him. Second, Zavala argues that the district court erred when it denied his motion to set aside default judgment because it entered default judgment against him less than 30 days after he was served process in violation of K.S.A. 2016 Supp. 60-308(a)(3). Third, Zavala argues that the district court erred when it denied his motion to set aside default judgment because he established excusable neglect for the court to set aside the default judgment as advanced under K.S.A. 2016 Supp. 60-255(b) and K.S.A. 2016 Supp. 60-260(b)(1). AKG challenges each of Zavala's contentions. Moreover, in a footnote of its brief, however, it also points out that Zavala has failed to include the transcript from the March 8, 2016, hearing on his motion to set aside the default judgment. AKG then notes that Zavala, as the party claiming error, has the burden to designate a record that establishes prejudicial error.

Indeed, as considered below, Zavala's failure to include the transcript from the hearing on his motion to set aside default judgment is determinative of all three of his final arguments.

*Standard of Review*

Appellate courts review challenges from the relief or denial of a motion to set aside a default judgment for an abuse of discretion. "But a district court's discretion is abused where the judge's action is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, or (3) based on an error of fact." *Garcia v. Ball*, 303 Kan. 560, 566, 363 P.3d 399 (2015). The burden of establishing that a default judgment should be set aside

always rests with the moving party. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 534, 216 P.3d 158 (2009).

*Appellate Record Inadequate*

As indicated previously, the March 8, 2016 hearing on the motion to set aside default judgment has not been included in the record on appeal. Moreover, the district court's journal entry of judgment for that hearing states: "For reasons stated upon the record, the Court denied Defendant's Motion to Set Aside the Default Judgment." Accordingly, nothing in the record on appeal contains the district court's rulings on Zavala's service of process argument, violation of K.S.A. 2016 Supp. 60-308(a)(3) argument, or excusable neglect argument.

The party asserting error must designate a record that establishes prejudicial error. Without such a record, the party's argument will fail. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). It is not this court's job to speculate about the district court's rulings. Here, because Zavala has not included the transcript from the hearing on his motion to set aside default judgment, this court is left in the position of guessing about the exact nature of the district court's findings or rulings. As a result, we simply have no idea why the district court denied Zavala's motion. Even though we recognize that the law does not like default judgments, especially those for large sums, Zavala has the burden to designate a record that establishes error. See *Garcia*, 303 Kan. at 568. The law's dislike for default judgments does not trump an appellant's burden to submit a record establishing error. Very clearly, Zavala has failed to meet his burden to designate a record establishing error. Therefore, we reject Zavala's remaining arguments for this reason.

Notwithstanding this incomplete record, it is readily apparent that there are other problems with Zavala's arguments that prevent him from succeeding on appeal. First, on

24

November 10, 2015, AKG rendered residential service on him in both Alamo, Texas, and Walnut Creek, California. As noted by AKG in its brief, although Zavala has argued that it failed to obtain residential service on him, when it left a copy of the petition with his mother, because "his mother's address in Alamo, Texas was not his dwelling or place of residence," Zavala has completely ignored in his brief that AKG obtained residential service on him in Walnut Creek, California. Zavala has attempted to remedy this failure by raising an argument concerning about how he was served notice of the default judgment hearing at his residence in California during oral arguments.

Nevertheless, it is a well-known rule of this court that an issue not briefed by the appellant is deemed abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Moreover, we generally do not consider arguments raised for the first time on appeal. See *Vontress v. State*, 299 Kan. 607, 612, 325 P.3d 1114 (2014). Here, by failing to challenge AKG's residential service on him in Walnut Creek, California, Zavala has abandoned any argument he may have had regarding that service. Because Zavala has abandoned any complaints about the validity of the residential service in Walnut Creek, California, his arguments concerning the validity of the residential service in Alamo, Texas, are pointless.

It is additionally worth noting that Zavala's complaint at oral arguments concerned the fact AKG served him notice of the default hearing by certified mail; he asserts that once a party uses residential service, it must continue to use residential service. Zavala did not cite any authority to support this assertion nor have we found any authority to support this assertion. K.S.A. 2016 Supp. 60-205, which outlines the many ways parties may serve process, does not provide that once a party serves its adversary in one manner it must continue to serve that party in that manner. In fact, K.S.A. 2016 Supp. 60-205(e) explicitly states that the "methods of serving and filing pleadings and other papers provided in this section constitute sufficient service and filing, but they are alternatives to and do not restrict different methods specifically provided by law."

25

Turning once again to residential service, we note that under K.S.A. 2016 Supp. 60-205(b)(2)(B)(ii), residential service may be obtained by leaving a petition "at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Concerning the California service of process, the process server stated that he obtained residential service on November 10, 2015, by leaving the petition with Zavala's mother, Penny Dunn. In his brief, Zavala concedes that the Walnut Creek address is his "home address." Concerning the Texas service of process, Huizar spoke to Zavala who told him to leave whatever he wanted to give him with his mother. Huizar then returned to the house he believed belonged to Zavala and to the person Zavala identified as his mother; the mother confirmed that Zavala lived at the house in Texas. As with the process server in California, Huizar then left the petition with the person identifying herself as Zavala's mother on November 10, 2015. Based on the preceding facts, we are satisfied that the residential service of process was obtained in both California and Texas, which complied with K.S.A. 2016 Supp. 60-205(b)(2)(B)(ii).

Further, we are certain that at the very least, AKG substantially complied with residential service of process as stated under K.S.A. 2016 Supp. 60-205(b)(2)(B)(ii) because in his sworn affidavit, Zavala admitted that he was aware of the residential service, that he "did not ignore [this] service," and that he immediately responded by contacting his attorney. He then e-mailed AKG's attorney on November 13, 2015, just 3 days following the date AKG obtained residential service. Under K.S.A. 2016 Supp. 60-204

> "[s]ubstantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property."

26

Even though substituted service has its imperfections, K.S.A. 2016 Supp. 60-205(b)(2)(B)(ii) takes care of situations when the defendant is temporarily absent from the state, hiding from service of process, or cannot be located. Thus, this statute allows service by personally leaving a copy of the pleading with someone on behalf of the defendant. That someone must be of suitable age and discretion who resides there. This ensures a high likelihood that defendant will receive actual notice.

Assuming arguendo that there was some irregularity or omission with the California or Texas residential service, which our review of the record did not reveal, we find that Zavala was made aware of AKG's lawsuit against him. The residential service gave Zavala notice so that he could come in and defend, and it invoked the jurisdiction of the Johnson County District Court, investing it with authority to proceed with the case.

Second, Zavala's argument that the district court failed to comply with K.S.A. 2016 Supp. 60-308(a)(3) is based on a mischaracterization of the district court's findings in its default judgment. K.S.A. 2016 Supp. 60-308(a)(3) states: "No default may be entered until the expiration of at least 30 days after service." Zavala asserts that the district court entered the default judgment against him because he failed to attend the December 3, 2015, scheduling conference. Zavala asserts that because the December 3, 2015, scheduling conference occurred less than 30 days after he was served process on November 10, 2015, the district court violated K.S.A. 2016 Supp. 60-308(a)(3) and was therefore required to vacate the default judgment. Yet, as stressed by AKG in its brief, the journal entry was not filed until December 21, 2015, which was 41 days after it obtained residential service of process in Walnut Creek, California. K.S.A. 2016 Supp. 60-258 states: "No judgment is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk." Thus, it is the filing date that is key. Moreover, based upon the filing date, the district court complied with K.S.A. 2016 Supp. 60-308(a)(3)'s 30-day time limit. Despite Zavala's assertion to the contrary, the district

27

court never ruled that it was entering default judgment against Zavala as of the December 3, 2015, scheduling hearing.

Third, Zavala's excusable neglect argument simply repeats his other arguments. That is, the entirety of Zavala's excusable neglect argument on appeal is as follows: (1) he has established excusable neglect because AKG violated its mandatory forum selection clause; (2) he has established excusable neglect because AKG failed to obtain residential service in Alamo, Texas; and (3) he has established excusable neglect because the district court "mistakenly decided that [he] was in default as of the date of the scheduling conference." Nevertheless, for reasons addressed at length already, each of the arguments Zavala has relied on to establish excusable neglect fail for multiple reasons. As a result, Zavala's excusable neglect argument fails.

In conclusion, Zavala's remaining arguments—that AKG failed to obtain residential service in Alamo, Texas, that the district court violated K.S.A. 2016 Supp. 60-308(a)(3), and that he established excusable neglect—were all raised in his motion to set aside default judgment. The district court held a hearing on this motion, where the district court explained why it was denying these arguments. Zavala, however, has failed to include the transcript from this hearing in the record on appeal. Based upon this failure, Zavala has failed to meet his burden to designate a record establishing prejudicial error, resulting in abandonment of his arguments.

*Record Further Tends to Indicate No Abuse of Discretion*

Finally, although the inadequacies in the appellate record wholly prevent us from properly analyzing Zavala's claims, and we affirm for this reason as well as the other reasons previously addressed, we believe it is important to distinguish Zavala's case from our Supreme Court's recent case *Garcia*. Indeed, we believe it is important to distinguish Zavala's case from *Garcia* even though neither party has addressed this case.

28

In *Garcia*, Garcia sued Ball for legal malpractice. Ball was served and received two extensions of time to answer, but never timely answered Garcia's petition. Garcia moved for default judgment and a demand for $522,400, and the district court granted his motion. Yet a month later, Ball moved to set aside the default judgment, arguing he failed to respond based upon excusable neglect. He also asserted that he had meritorious defenses. The meritorious defenses included arguments concerning the statute of limitations and failure to state a cause of action under Kansas law. The district court granted Ball's motion to set aside default judgment because "the law dislikes defaults, and because Mr. Ball has a meritorious defense." 303 Kan. at 564.

Garcia appealed this ruling to this court. In a split decision, this court held that the district court abused its discretion when it set aside the default judgment. 303 Kan. at 565. Our Supreme Court disagreed and reversed this court because Ball had presented meritorious defenses. 303 Kan. at 569-71. In doing so, our Supreme Court declared the following: (1) that "the law dislikes default judgments"; (2) that the law especially dislikes default judgments in "'matters involving large sums'" if it can be avoided; and (3) that in "'determining whether to set aside a default judgment, a court should resolve any doubt in favor of the motion so that cases may be decided on their merits.'" 303 Kan. at 568. Our Supreme Court further held that although K.S.A. 2016 Supp. 60-260(b)(1)-(6) dictated whether district courts should grant motions to set aside default judgments, courts should look to the factors created by *Montez v. Tonkawa Vill. Apartments*, 215 Kan. 59, 523 P.2d 351 (1974), as "viable benchmarks for judicial discretion" when deciding motions to set aside default judgments. 303 Kan. at 570. The *Montez* court held: "A motion to set aside a default may be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act." 215 Kan. 59, Syl. ¶ 5. In essence, *Montez'* "meritorious defense"

29

factor falls under K.S.A. 60-260(b)(6) which allows district courts to set aside default judgments for "any other reason that justifies relief."

In applying the holdings of *Garcia* to this case, we turn our focus first back to the fact that Zavala has failed to meet his burden to designate a record establishing prejudicial error on appeal. As explained in depth already, the lack of transcripts in this record on appeal has completely hindered our ability to review Zavala's arguments. This is because we do not know why the district court denied Zavala's motion to set aside the default judgment, only that it denied it. In *Garcia*, our Supreme Court never asserted that Ball failed to meet his burden to designate a record; thus, it is readily apparent that Ball met his burden. Clearly, Zavala's failure to meet his burden to designate a record is an incredibly significant factor that makes Zavala's case distinguishable from *Garcia*.

Furthermore, from what is included in the record on appeal, at least two of the *Montez* factors weigh against Zavala. This, in turn, supports that the district court did not abuse its discretion. First, although Zavala has argued excusable neglect, it is readily apparent based upon the affidavit that he attached to his motion to set aside default judgment that his actions were actually inexcusable neglect. Again, in Zavala's sworn statement he stated he "did not ignore the service of the summons and petition" because he "immediately contacted an attorney." He then explained that he tried "to engage the company in a dialogue concerning this dispute without resorting to the legal process, but without success." In short, Zavala's actions seem the very definition of a willful act that cannot be defined as excusable neglect.

Second, although he did allege he had a meritorious defense in his affidavit, it is unclear if Zavala actually argued that he had a meritorious defense before the district court as this argument was never included in his motion to set aside default judgment. Moreover, because we do not have the transcript from the hearing on the motion, it is unclear if Zavala raised a meritorious defense at that hearing. In any event, Zavala does

30

not argue that he has a meritorious defense on appeal. Once again, an issue not raised is deemed abandoned. *Superior Boiler Works*, 292 Kan. at 889. Zavala's failure to argue that he has a meritorious defense on appeal is yet another reason why his case differs from *Garcia*.

For argument sake, even if Zavala had argued meritorious defense below, the district court ruled on this, and he continued to argue that he had a meritorious offense on appeal, we would not find that the district court erred by rejecting Zavala's argument. To review, Zavala's only comment about having a meritorious defense came in his affidavit attached to the motion to set aside judgment. In his affidavit, Zavala alleged the AKG's "Petition [was] wholly unfounded" and "contain[ed] a number of false allegations about [him]." He then alleged that AKG likely sued him because he was going to sue AKG for its wrongful actions regarding stock and because they wanted to eliminate his presence in the company.

In *Garcia*, Garcia asserted that Ball's failure to provide evidence in support of his defenses meant his defenses were not meritorious. Our Supreme Court rejected that argument because "[t]he facts necessary for [Ball's] defense . . . were readily discernable from Garcia's petition," making the district court's ruling "factually grounded." 303 Kan. at 569. The *Garcia* court's emphasis on the fact that the district court's finding was "factually grounded" in Garcia's petition indicates that movants must do more than allege that they have a meritorious defense. Indeed, in other cases, our Supreme Court has explicitly held that "the law relating to vacating a default judgment . . . require[s] the party asserting the interest *to demonstrate* a meritorious defense or an interest that may be impaired." (Emphasis added.) *Landmark Nat'l Bank*, 289 Kan. at 535; see also *Jenkins v. Arnold*, 223 Kan. 298, Syl. ¶ 2, 573 P.2d 1013 (1978).

Here, unlike Ball, we believe Zavala's assertion that he had a meritorious defense fell below this standard. This is because Zavala did not present evidence to support his

31

assertion that he had a meritorious defense. Zavala emphasized his belief that AKG sued him because he intended to sue AKG and because AKG wanted to eliminate his presence in the company. In making this argument, however, Zavala never presented any evidence supporting that AKG's claims of breach of fiduciary duty and conversion against him were false. Moreover, he never expressly denied his personal use of corporate funds or provided any explanation why AKG's accounting and bank records show that he used $500,400.35 of corporate funds for noncorporate purposes. Accordingly, assuming arguendo that the district court rejected Zavala's argument for the preceding reason, that rejection would not have been an abuse of discretion because outside of saying he has a meritorious defense against AKG's claims, there is no evidence that such a meritorious defense exists.

In conclusion, although we recognize that the law does not favor default judgments, especially when those judgments award large sums of money, Zavala's case is unique. It is unique mostly because of Zavala's own actions—whether it be his failure to meet his burden to designate a record that establishes error on appeal or allege and explain why he has a meritorious defense against AKG's claims or whether it be his admission he was simply ignoring the lawsuit hoping it would go away. Either way, because of the unique circumstances of this case, this case is different from *Garcia*, where our Supreme Court reiterated its stringent rules regarding default judgments. Therefore, we affirm the district court's denial of Zavala's motion to set aside default judgment.

Affirmed.